954 A.2d 1083

**STATE of Maryland**

v.

**Colonel Preston LONG.**

**No. 142, Sept. Term, 2007.**

Court of Appeals of Maryland.

Aug. 25, 2008.

Mary Ann Ince, Asst. Atty. Gen., (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), Baltimore, MD, for appellant.

Arthur M. Reynolds, Jr., on brief, Riverdale, MD, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE (Retired, specially assigned), IRMA S. RAKER (Retired, specially assigned), JJ.

HARRELL, J.

## I.

On the afternoon of 28 December 2006, Colonel Preston Long, Appellee, was a passenger in an automobile driven by his fiancé, Iretha Spriggs. In addition to Long and Spriggs, the vehicle was occupied by their son and daughter. Long and Spriggs were returning to their residence after shopping. A Prince George's County police officer, Officer McEntyre, spied the vehicle making an illegal U-turn and pursued the car with the intention of conducting a traffic stop.[1] Before he could effect this intention, Spriggs and Long arrived at the home, located in Landover, Maryland. After parking the car in front of their home, Long, Spriggs, and their children exited the car and entered the house, all before the police arrived.

Shortly thereafter, Officers McEntyre and Nichols (another Prince George's County police officer who joined the pursuit) parked in front of the home and approached the now unoccupied vehicle. Officers Nichols and McEntyre later testified that they smelled marijuana emanating from the interior of the car through its open windows. Officer McEntyre searched the unlocked vehicle. During the search of the vehicle, a vial of Phencyclidine (PCP) was discovered underneath or near one of the car's rear seats, where the children had been sitting.

As the police were searching the car, Long came out of the house and, according to Officer Nichols, was "upset" and "angry." Long was arrested by the police in the yard of the residence. Soon thereafter, Spriggs also was arrested after she came to the door of the house. The police, from the vantage point of the porch of the residence and through an open front door, observed, in an aquarium inside of the house, two alligators and a turtle. The reptiles appeared to the police to be malnourished and neglected. A search warrant

---

1. Another officer, Officer Nichols, also expressed reservations regarding the legality of the car's tinted windows and later formed the opinion that the vehicle identification number on the vehicle had been altered.

for the residence was obtained and executed.[2] Two hand guns, a sawed-off shot gun, ammunition for the weapons, a flack jacket, and drug paraphernalia were seized.

On 5 April 2007, Long was tried in the District Court of Maryland, sitting in Prince George's County, based on a statement of charges (Case No. E00324177) enumerating two counts of possession of PCP with the intent to distribute,[3] one count of possession of drugs (not marijuana),[4] one count of disorderly conduct,[5] and three neglect and cruelty to animals charges.[6] The State dismissed the abuse and cruelty to

---

**2.** Long claims police searched the house before obtaining the warrant. Long also points to claimed discrepancies in the case paperwork filed by the police as to the times of day cited for certain occurrences.

**3.** Maryland Code (2002), Criminal Law Article, § 5–602 provides:
**Manufacturing, distributing, possessing with intent to distribute, or dispensing controlled dangerous substance.**
Except as otherwise provided in this title, a person may not:
(1) manufacture, distribute, or dispense a controlled dangerous substance; or
(2) possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to manufacture, distribute, or dispense a controlled dangerous substance.

**4.** Maryland Code (2002), Criminal Law Article, § 5–601(a)(1) provides:
**Possessing or administering controlled dangerous substance.**
(a) *In general.*—Except as otherwise provided in this title, a person may not:
(1) possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice;

**5.** Maryland Code (2002), Criminal Law Article, § 10–201(c)(2) provides:
**Disturbing the public peace and disorderly conduct.**
. . . .
(c) *Prohibited.*—
(2) A person may not willfully act in a disorderly manner that disturbs the public peace.

**6.** Maryland Code (2002, 2007 Cum.Supp.), Criminal Law Article, § 10–604(a) provides:
**Abuse or neglect of animal.**
(a) *Prohibited.*—A person may not:
(1) overdrive or overload an animal;
(2) deprive an animal of necessary sustenance;

animals charges at the beginning of the trial. Subsequently, Long was acquitted of the remaining charges.[7]

In a second case brought in the District Court (Case No. E00324184), the State, by a statement of charges, charged Long with crimes related to the items seized in the execution of the search warrant of the residence. Those charges ultimately were *nol prossed* by the State.

On 12 April 2007, after the *nolle prosequi* was entered in the second District Court case, the State obtained an indictment in the Circuit Court for Prince George's County charging Long with three counts of possession of a regulated firearm after having been convicted of a disqualifying crime,[8] possession of a short-barreled shotgun,[9] possession of bullet-

---

(3) inflict unnecessary suffering or pain on an animal;

(4) cause, procure, or authorize an act prohibited under item (1)(2), or (3) of this subsection; or

(5) if the person has charge or custody of an animal, as owner or otherwise, unnecessarily fail to provide the animal with nutritious food in sufficient quantity, necessary veterinary care, proper drink, air, space, shelter, or protection from the weather.

7. The judge explained that, in her view, the search of the vehicle parked at the residence was impermissible. The legality of the subsequent search of the residence was not addressed. Moreover, the District Court judge ruled that Long did not possess the drugs found in the vehicle because they were not within his reach. Finally, the acquittal on the disorderly count flowed from the judge concluding that Long's conduct represented mere curiosity about what the police were doing around the vehicle in front of his house, rendering his conduct not criminal.

8. Maryland Code (2002), Public Safety Article, § 5–133(b)(1) provides:
   **Restrictions on possession of regulated firearms.**
   . . . .
   (b) *Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person:
   (1) had been convicted of a disqualifying crime;

9. Maryland Code (2003), Public Safety Article, § 5–203(a) provides:
   **Possession of short-barreled rifle or short-barreled shotgun.**
   (a) *Prohibited.*—A person may not possess a short-barreled rifle or short-barreled shotgun unless:
   (1) the person, while on official business is:
   (i) is a member of the law enforcement personnel of the federal government, the State, or a political subdivision of the State;

proof body armor having previously been convicted of a crime of violence or drug trafficking crime,[10] and possession of drug paraphernalia.[11]  Long responded with a motion to suppress the evidence discovered during the search of the residence, and a motion to dismiss the indictment, as violative of the prohibition against "double jeopardy." [12]

The Circuit Court granted Long's motion to dismiss the indictment and indicated that it was unnecessary, therefore, for the court to address the suppression motion.  The hearing

---

(ii) a member of the armed forces of the United States or the National Guard while on duty or traveling to or from duty;

(iii) a member of the law enforcement personnel of another state or a political subdivision of another state, while temporarily in this State;

(iv) a warden or correctional officer of a correctional facility in the State; or

(v) a sheriff or a temporary or full-time deputy sheriff; or

(2) the short-barreled shotgun or short-barreled rifle has been registered with the federal government in accordance with federal law.

**10.**  Maryland Code (2002), Criminal Law Article, § 4–107(a) provides: **Same [Bulletproof body armor]—Permit to use, possess, or purchase.**

(a) *Prohibited.—Use, possession, or purchase without permit.*—Except for a person holding a valid permit issued under subsection (c) of this section, a person who was previously convicted of a crime of violence or a drug trafficking crime may not use, possess, or purchase bulletproof body armor.

**11.**  Maryland Code (2002, 2007 Cum.Supp.), Criminal Law Article, § 5–619(d)(1)(i) provides:

**Drug paraphernalia.**

. . . .

(d) *Delivery or sale; penalty.*—(1)  Unless authorized under this title, a person may not deliver or sell, or manufacture or possess with intent to deliver or sell, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that the drug paraphernalia will be used to:

(i) plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled dangerous substance [.]

**12.**  Long's written motion as to double jeopardy did not specify whether it relied on federal constitutional principles or Maryland common law. At oral argument before the Circuit Court, he referred to "the Constitution" on one occasion.

judge concluded that the State violated double jeopardy principles because the State's Attorney could have consolidated all of the charges arising from the events of 28 December 2006 in the first District Court case, but failed to do so. He stated that he believed that the State could not separate the charges, remarking that the State gets "one trial" in which to bring all of the charges against Long. He further explained that all of the facts and circumstances stemmed from the "same continuum of ... event[s]" and that the police never left the scene; therefore, dismissal of the indictment was appropriate.

The State filed a timely appeal to the Court of Special Appeals. We, on our initiative, issued a writ of certiorari before the intermediate appellate court could hear and decide the appeal. 404 Md. 151, 945 A.2d 1270 (2008). We shall consider whether the Circuit Court correctly dismissed the indictment on double jeopardy grounds.

We reverse the judgment of the Circuit Court and remand the case for further proceedings.

## II.

According to § 12–302(c)(1) of Md.Code (1974, 2006 Repl. Vol.), Courts and Judicial Proceeding Article, in a criminal case, the State "may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition." *State v. Anderson,* 320 Md. 17, 24, 575 A.2d 1227, 1230 (1990). This Court decides purely legal questions. *Cartnail v. State,* 359 Md. 272, 282, 753 A.2d 519, 525 (2000).

## III.

The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. In *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), the Supreme Court held that the Fifth Amendment prohibition against making a defendant twice accountable for the same offense is

a provision applicable to the States. Double Jeopardy, under both the Fifth Amendment and at common law, bars multiple punishments and trials for the same offense. *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232, 241 (1975); *see also Cousins v. State*, 277 Md. 383, 388, 354 A.2d 825, 828 (1976). Despite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy. *Taylor v. State*, 381 Md. 602, 610, 851 A.2d 551, 555 (2004).

The State contends that the hearing judge misapplied the law in determining whether there was a constitutional violation of Long's right not to be put in jeopardy twice. The State argues that application of the well-established "same evidence" test does not result in the preclusion of prosecution of the charges in the indictment in the Circuit Court.

Long contends that, because all of the alleged offenses in the District Court action where he was acquitted and the charges in the Circuit Court indictment occurred effectively at the same time, on the same date, at the same place, and were committed by the same person, the events constituted a "single event." Thus, he should not be required to defend "piecemeal," in successive prosecutions, the charges arising from the single event. We reject Long's argument and agree with the State. Long and the hearing judge appear to have applied the "same transaction" test with regard to the analysis of the double jeopardy challenge. This is an incorrect application.

"Maryland has never recognized a common law right to have joined at one trial all offenses arising from the same transaction." *Cousins*, 277 Md. at 395, 354 A.2d at 832. Both the United States Supreme Court and this Court have adopted the "same evidence" test for resolving sameness of law questions and have declined to accept the same transaction test. *Cousins*, 277 Md. at 393, 394, 354 A.2d at 831, 832. The same evidence test "focuses upon the elements of each offense; if all of the elements of one offense are included in the other

offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465, 473 (1986). Described differently, the same evidence test is when "each offense requires proof of a fact which the other does not, [then] neither multiple prosecutions nor multiple punishments are barred by the prohibition against double jeopardy even though each offense may arise from the same act or criminal episode." *Cousins*, 277 Md. at 388–89, 354 A.2d at 829. The same evidence test "focuses on the relationship between the offenses, rather than on whether the multiple offenses arise from the same conduct or incident. . . ." *Anderson v. State*, 385 Md. 123, 132, 867 A.2d 1040, 1045 (2005).

*In re Michael W*, 367 Md. 181, 182–84, 786 A.2d 684, 685–86 (2001), a case relied on by Long, involved a juvenile who previously was convicted in the District Court of violating a license restriction that prohibited a licensee from driving a motor vehicle with a blood alcohol concentration of .02 or more. Based on the same incident that gave rise to the District Court case, Michael W. was subjected later to a juvenile delinquency proceeding in the Circuit Court for Howard County for an alleged violation of § 21–902 of the Md. Code, Transportation Article (among other charges), which provided that an individual may not drive "under the influence" of alcohol or "while intoxicated." *In re Michael W.*, 367 Md. at 184, 183, 786 A.2d at 686. This Court held that the defendant could be prosecuted separately for the two charges flowing from the same incident because the later Circuit Court charge had a distinct element that was not present in the previous District Court charge. *In re Michael W.*, 367 Md. at 187, 786 A.2d at 688. We noted that if both offenses from the same incident in question were essentially the *same offense*, only then would double jeopardy bar the later Circuit Court proceeding. *In re Michael W.*, 367 Md. at 186, 786 A.2d at 687. We declined to accept Michael W.'s contention that the offenses should have been joined in one proceeding. *In re Michael W.*, 367 Md. at 191, 786 A.2d at 690. Long's reliance on *In re Michael W.* is misplaced.

■ Under the prevailing double jeopardy jurisprudence adopted by the U.S. Supreme Court and this Court, the crucial question to be asked in the present case is as follows: did the earlier acquittal in the District Court on charges of disorderly conduct, possession of drugs (not marijuana), and possession of PCP with intent to distribute, require proof of a fact that the subsequent indictment in the Circuit Court on charges of possession of regulated firearms after conviction of a disqualifying crime, possession of a short-barreled shotgun, possession of bulletproof body armor after having previously been convicted of a crime of violence or drug trafficking crime, and possession of drug paraphernalia, does not? We conclude that the Circuit Court indictment contains separate and distinct offenses and that the evidence offered by the State in the District Court on the charges tried there did not involve the same evidence that will be required for determination of the charges in the Circuit Court indictment.[13] Thus, application of the same evidence test demonstrates that the Circuit Court erred in determining that double jeopardy precluded the prosecution of the charges in the Circuit Court.

## IV.

■ "In *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 475 (1970), the Supreme Court held that the federal rule of collateral estoppel in criminal cases is incorporated in the Fifth Amendment's guarantee against double jeopardy." *Ford v. State*, 330 Md. 682, 718, 625 A.2d 984, 1001 (1993). Maryland common law also recognizes the collateral estoppel form of double jeopardy. *Cousins*, 277 Md. at 395, 354 A.2d at 832.

---

**13.** For example, as to the drug paraphernalia charge in the Circuit Court indictment, the State would not be barred by double jeopardy from prosecuting this charge because, under the *Blockburger* analysis, the elements of the offense that are required for conviction of possession of drug paraphernalia are distinct from those that the State needed to prove to in order to convict Long of possession of drugs and possession of PCP with intent to distribute charges.

■ Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. If the fact previously litigated is a key component in later offenses, then a subsequent finding in favor of the defendant in the first trial naturally will compel an acquittal in the latter trial. *Apostoledes v. State*, 323 Md. 456, 463–64, 593 A.2d 1117, 1121 (1991).

■ The critical question to be confronted when considering the proper invocation of the principles of collateral estoppel is "whether an issue of ultimate fact has been previously determined in favor of the defendant." *Butler v. State*, 335 Md. 238, 253, 643 A.2d 389, 396 (1994). The party asserting estoppel always bears the burden of proof to demonstrate that the fact for which he or she is seeking to bar relitigation was decided in a prior proceeding. *Butler*, 335 Md. at 254, 643 A.2d at 396.

The State argues that Long's prosecution in the Circuit Court for the alleged offenses revealed by the execution of the search warrant at the home do not subject him to relitigation of any material fact underlying his prior acquittals in the District Court relating to the charges from the search of the car and the disorderly conduct in the yard.

Long argues that the State should be estopped from prosecuting the Circuit Court charges in light of the District Court's acquittal on the charges in the first proceeding, as well as the District Court's finding that the police officers conducted a warrantless search of the vehicle, a violation of the Fourth Amendment. We reject Long's arguments.

In *Apostoledes*, the defendant, in a four count indictment, was charged with first degree murder, conspiracy to commit murder, unlawful use of a handgun in the commission of a felony or crime of violence, and accessory-after-the-fact to murder. *Apostoledes*, 323 Md. at 459, 593 A.2d at 1119. The trial court dismissed the conspiracy to commit murder charge, and, at the close of evidence, the defendant was acquitted as to

the charge of accessory-after-the-fact to murder. *Apostoledes*, 323 Md. at 460, 593 A.2d at 1119. After six hours of deliberation as to the remaining two charges, the jury stated that it was unable to reach a verdict on the remaining counts and a mistrial was declared. *Apostoledes*, 323 Md. at 460–61, 593 A.2d at 1119–20. The defendant moved to dismiss the charges on which the first jury deadlocked when the State sought to try her anew, arguing that the later case was barred by double jeopardy and collateral estoppel principles. *Apostoledes*, 323 Md. at 461, 593 A.2d at 1120. The defendant specifically argued that the judgment of acquittal on the conspiracy to commit murder count estopped a retrial on the murder and handgun charges. *Apostoledes*, 323 Md. at 464, 593 A.2d at 1121. This Court held that the "acquittal of the conspiracy count was not based on the State's failure to prove any fact that would be an essential element of murder based on [previously determined] aiding and abbetting [charges]." *Apostoledes*, 323 Md. at 467, 593 A.2d at 1122. Hence, the State was not collaterally estopped from prosecuting a second trial as to the remaining charges. *Apostoledes*, 323 Md. at 469, 593 A.2d at 1124.

Similarly, in the case at hand, the offenses charged by the indictment in the Circuit Court, pursuant to the search warrant executed on the residence,[14] do not in any way subject Long to relitigation of any material fact adjudicated during the trial leading to his acquittal on the charges in the District Court case. The factual determinations made by the District Court judge in explaining her reasons for acquitting Long in District Court Case No. 000E00324177 relate to whether Long was in possession of the PCP recovered from the car and whether his conduct in the front yard of the residence constituted a disorderly disturbance of the peace. The District Court concluded that Long was not guilty of the possession of drug charges because, as a 'passenger, he was unable to

---

14. We express no views as to the legitimacy of the search and seizure effected inside the home. That will need to b e resolved by the Circuit Court on remand.

control (i.e., reach) physically the location where the drugs were found in the rear seating area of the vehicle. The District Court further concluded that Long was not guilty of disorderly conduct because he was "just curious" about the presence of the police in the front yard of the residence.

The charges in the Circuit Court indictment, which include the possession of regulated firearms after conviction of a disqualifying crime, a short-barreled shotgun, possession of bulletproof body armor having previously been convicted of a crime of violence or drug trafficking crime, and drug paraphernalia, all stemmed from discovery of those items in the home.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.**